## THE SAN JACINTO.[1]

### SAVARESE v. THE SAN JACINTO.

*(District Court, E. D. New York. January 18, 1887.)*

COSTS—MARSHAL—DISBURSEMENTS FOR SHIP-KEEPER—KEEPER ENGAGED BY CLAIMANT—DELAY IN SALE OF VESSEL.

The steam-ship S. J., condemned to be sold, remained in the custody of the United States marshal. By an arrangement between the proctors for the parties the sale was adjourned from October to February, the proctors for the claimant agreeing to place a watchman on board. No direction was given the marshal by any person to release the vessel, nor was any order of court to that effect applied for. *Held,* (1) that such an agreement, whereby the vessel remained so long in the custody of the marshal without necessity, was not approved by the court; (2) that the marshal was correct in keeping his watchman aboard, in the absence of the court's sanction of his removal; (3) that the marshal was entitled to tax in his costs the amount actually disbursed by him for a ship-keeper, notwithstanding the presence on the vessel of the keeper employed by claimant.

In Admiralty.

*John J. Allen,* for the United States marshal, appellee.

*Ullo, Ruebsamen & Hubbe,* for appellant.

BENEDICT, J. This case came to me on an appeal from the clerk's taxation of the marshal's costs. The item objected to is the sums paid for the keepers of the vessel.

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In the year 1885 several libels were filed against the steamer San Jacinto, and the vessel taken into custody by the marshal in pursuance of processes issued in each case. Subsequently defaults were taken and decrees entered in favor of the several libelants, and a *venditioni exponas* issued in the case above named. Thereafter an agreement was made between the libelants and the claimant, which provided among other things for an adjournment of the sale of the vessel from the eighth day of October, 1885, to the tenth day of February, 1886, and to such further time as might be agreed upon by the proctors of the libelants and the proctors of the claimants, for the purpose of carrying out the agreement, "and, in consideration of the agreement of the proctors for the libelants, to direct the United States marshal for the Eastern district of New York to place on board the said vessel as watchman such responsible and proper person as may be designated by the proctor for the claimant," the proctors for the claimant agreed to place on board the vessel a watchman, to take care of the vessel, under the supervision and direction of the marshal, and pay the watchman for his services, and hold the libelants harmless for all claims therefor. It was at this time understood that the vessel was to remain in the custody of the marshal until the claims of the libelants were paid. Subsequently, as it would seem, the claims of the various libelants were subsequently paid by the claimants or for their benefit; but the suits were formally kept alive by an assignment of the claims to a third party.

In pursuance of the understanding between the proctors for the claimants and the proctor for the libelant, a person was designated by the claimants to be watchman on board the vessel, and has been on board the vessel, and has been paid therefor at the rate of $40 a month, by the claimants. No direction was ever given the marshal by the libelants or any other person to release the vessel from his custody. No order of the court to that effect was ever made or applied for, and the marshal has maintained his custody of the vessel up to this time, and now inserts in his bill of costs the amount of his disbursements for keepers of the vessel. This item is objected to by the claimants.

In regard to all this, I have to say, first, that I by no means approve the arrangement whereby this steamer was left in the custody of the marshal for this long period, apparently held for liens which in reality had been paid,—an arrangement that the marshal should hold the vessel nominally for the libelants, in reality as a cover for the benefit of the claimants. No such arrangement should, in my opinion, ever be entered into. But the question here is as to the agreement made between the proctor for the claimant and the marshal, and its effect upon the marshal's costs.

There is a misunderstanding between the marshal and the proctor for the claimants as to the agreement between them. The marshal contends that the claimant was not only to provide a watchman, but also furnish the marshal a written direction from the various libelants to withdraw his keepers from the vessel, which direction was never furnished. The proctor for the claimant, on the other hand, insists that

he made no agreement to furnish such direction to the marshal from the libelant's proctor, and he points to the fact that the watchman provided by him was allowed by the marshal on board the vessel, as proof that there was no agreement on his part to furnish a direction from the libelant's proctor to that effect. But what the agreement made between the marshal and the proctor for the claimant was, is immaterial, for the reason that, whatever the agreement was, it was never sanctioned by the court.

In the case of *The Independent*, 9 Ben. 489, it was said by CHOATE, J.: "The mere notice from the libelants not to put a keeper on board cannot excuse the marshal from the duty of custody imposed upon him by the mandate;" and, again: "A libelant desiring to be relieved of the expense of a keeper should, instead of relying on a notice to the marshal, apply to the court, and perhaps, on notice to the parties who might be prejudiced, the court may permit or direct the withdrawal of the keepers."

What was said by Judge CHOATE applies with greater force in a case like the present. It is plain that the agreement contended for by the court did not relieve the marshal from responsibility for the safe-keeping of the vessel. In the absence of such sanction, it would still be his duty to maintain his custody of the vessel, whatever may have been the arrangement between him and the proctor for the claimants. I do not say that even the sanction of the court to such an agreement would avail to protect the marshal, in case of departure or destruction of the vessel. All I say is that, in the absence of such sanction, the agreement contended for the claimant afforded no reason for the marshal's withdrawal of his keepers from the vessel. He still had not only the right, but it was his duty, to maintain the vessel in the keeping of his own keepers, for whose action he would be responsible. If, then, notwithstanding the presence on board the steamer of a watchman provided for and paid by the claimants, the marshal did employ other keepers to maintain his custody of the vessel, he is entitled to tax in his costs the sum actually paid for such services, not exceeding, of course, the amount allowed by law. The only question here, then, is, did the marshal actually disburse the amount he charges in paying keepers of this vessel? Upon this question there is no evidence except the testimony of the marshal himself. That is full and explicit to the effect that he did pay them the sums charged, for the purpose specified in his bill, and there is no evidence to the contrary. Upon such evidence the clerk was right in allowing the item in dispute, and his taxation was therefore right, and is affirmed.